# The Attorney General of Texas

**JIM MATTOX**
Attorney General

November 14, 1984

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso. TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806.747-5238

4309 N. Tenth. Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Dorman H. Winfrey
Director and Librarian
Texas State Library
P. O. Box 12927
Austin, Texas    78711

Opinion No. JM-229

Re: Whether a custodian of non-current privileged personnel medical records may adopt a policy of opening the records a certain number of years after they are generated or compiled and related questions

Dear Mr. Winfrey:

You request our decision regarding the applicability of the Texas Open Records Act, article 6252-17a, V.T.C.S., to certain medical records found in personnel files of the Texas National Guard for the years 1903-1913. Initially, you ask whether the specific information contained in medical records found in a personnel file is excepted from public disclosure by section 3(a)(2) of the Open Records Act. Additionally, because many of the individuals covered by the files are now of advanced years or deceased and because of the importance of the files to genealogical research, your main question is whether you may adopt a policy of disclosing protected personnel records a certain number of years after the records are generated or compiled, despite their protected status. Finally, by indicating that preserving the records serves no purpose if they cannot be opened to the public, you ask whether such records may be destroyed.

As a preliminary matter, analysis of these exceptions to public disclosure remains the same after transfer of the non-current records to the State Archives as when the information was in the possession of the originating agency. Attorney General Opinion H-917 (1976). Based upon the two examples of records submitted with your request, we conclude that most of the information contained in the records is not protected from disclosure under the Open Records Act. As will be seen, only portions of the submitted records meet the technical definition of "medical records" for purposes of protection from disclosure. Personnel file information is treated differently from medical records under the Open Records Act. Certain information is excepted under either section 3(a)(1) or section 3(a)(2), or under both sections of the act.

Section 3(a)(1) excepts from required public disclosure "information deemed confidential by law, either Constitutional, statutory, or by judicial decision. . . ." Section 3(a)(2) of the act excepts "information in personnel files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. . . ." Thus, both provisions encompass a degree of protection of privacy. Section 3(a)(1), however, also includes protection of information deemed confidential by statute. In the instant case, a specific statute applies to medical records; this statute will be examined first.

The Medical Practice Act, article 4495b, V.T.C.S., in section 5.08(b), indicates that "[r]ecords of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician" generally do not fall within the ambit of public information. See Attorney General Opinion MW-381 (1981); Open Records Decision Nos. 343, 316 (1982). To claim confidentiality under article 4495b, the records must actually be prepared or maintained by the physician. Open Records Decision No. 343. Moreover, medical history information furnished by an employee to his employer is not within article 4495b. Open Records Decision No. 316. In the two records submitted, for example, medical history information appears on one record on a form different from that used by the examining physician, whereas, in the other, the information was elicited and recorded by the physician. Only the portions of the personnel files which were actually prepared by a physician are properly deemed "medical records" and thus made confidential by article 4495b in conjunction with section 3(a)(1) of the Open Records Act. Disclosure of the remaining information, which is not prepared by a physician, depends upon the other aspects of sections 3(a)(1) and upon the general scope of section 3(a)(2).

As indicated, section 3(a)(2) of the Open Records Act excepts from disclosure personnel file information which, if revealed, would constitute a clearly unwarranted invasion of personal privacy. The exception may be claimed only when the information in question reveals intimate details of a highly personal nature. Open Records Decision Nos. 316 (1982); 298 (1981); 169 (1977). The scope of this exception with regard to former as well as current employees is well established. See Open Records Decision Nos. 133, 119 (1976); 93, 71, 68 (1975). For example, an employee's name, address, gender and age are public information. Moreover, the mere fact that an injury or illness has occurred is not protected when it does not reveal specific information. Open Records Decision No. 336 (1982); cf. Open Records Decision No. 422 (1984) (some otherwise public information is protected because it is related to confidential information).

Thus, the scope of section 3(a)(2) protection is very narrow; the test is similar to the test for common-law privacy as covered by

section 3(a)(1).  Hubert v. Harte-Hanks Texas Newspapers, Inc., 652 S.W.2d 546, 550 (Tex. App. - Austin 1983, writ ref'd n.r.e.). Accordingly, the following discussion of section 3(a)(1) also applies to section 3(a)(2).  Because of the substantial public interest in the records of public employees, however, in some instances employee privacy may be somewhat less broad than common-law privacy.  Open Records Decision Nos. 423 (1984); 269 (1981); 169 (1977).

The statutory law aspect of section 3(a)(1) has already been mentioned in connection with the Medical Practice Act.  Exception 3(a)(1) also protects constitutional and common-law privacy.  The constitutional right of privacy is primarily a restraint upon unwarranted governmental interference or intrusion into areas deemed "zones of privacy" such as marriage, procreation, contraception, family relationships and child rearing and education.  Paul v. Davis, 424 U.S. 693 (1976).  The Texas Supreme Court also recognizes a disclosural privacy protection for information falling within these spheres.  Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 568, 679 (Tex. 1976).  The test is whether the state's action, in making information about an individual available for public inspection, restricts the individual's freedom in an area recognized to be within a zone of privacy protected by the Constitution.  540 S.W.2d at 680-681.

In contrast, without regard to a particular "zone," common-law privacy focuses on the intimate or embarrassing nature of personal facts, the disclosure of which would be "highly objectionable to a person of ordinary sensibilities."  540 S.W.2d at 683.  For this reason, a considerable quantity of information could conceivably fall within both common-law and constitutional privacy protection.

With regard to medical information not within the scope of article 4495b, only specific illness, injury, and examination facts are excepted from disclosure by section 3(a)(1).  Open Records Decision Nos. 262 (1980); 131 (1977).  For example, detailed emergency medical service reports relating to pregnant women under the care of lay midwives are excepted from disclosure, Open Records Decision No. 237 (1980), whereas emergency medical service incident reports which provide relatively little detail are not ordinarily protected from disclosure.  Open Records Decision No. 258 (1980).

Because many of the individuals to whom these 1903-1913 records apply are now of advanced years or deceased, we emphasize that the right of privacy lapses upon death.  Attorney General Opinion H-917 (1976); Open Records Decision No. 272 (1981).  Thus, with regard to information protected only by constitutional or common-law aspects of privacy of section 3(a)(1) or by section 3(a)(2), if a review of the file of a deceased former employee reveals no highly intimate or embarrassing information about living individuals, the information is

public and must be disclosed.   Attorney General Opinion H-917.   No similar lapse of protection, however, applies to medical records covered by article 4495b.

The Medical Practice Act fails to state expressly whether or not its privilege lapses upon death; indeed, the act clearly encompasses the concept of continuing protection.   For example, the act includes, among its numerous exceptions, an exception to the medical records privilege for court or administrative proceedings related to "any physical or mental condition including death of the patient."   Sec. 5.08(g)(4).   (Emphasis added).   Similarly, section 5.08(j)(1) provides for consent to release confidential information by a personal representative of the patient when the patient is deceased.   Within these' confidentiality exceptions, the inclusion of a reference to the death of the patient would be unnecessary if the protection afforded by the act lapsed upon death.   Therefore, any information in these files which constitutes a "medical record" under article 4495b may not be disclosed upon the death of the person covered unless the proper written consent has been filed.

Your second inquiry is whether the custodian of confidential records may adopt a formal policy of opening very old records a certain, fixed number of years after they are generated, despite their confidential status.   In support of the authority to adopt such a policy, you cite a federal policy of opening private census information, held in the United States Archives, 75 years after the information is initially generated or compiled.   See 41 C.F.R. §105-61.5302-18 (1982).   We conclude that you may not adopt a similar rule.

Although such a rule would doubtless effect a laudable goal, it is our opinion that, absent express or necessarily implied authority to open confidential information to the public, a custodian of public records may not adopt a policy or rule which "amends" a specific statute, see Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d at 677, or, in effect, waives a third party's privacy.   Section 14(a) of the Open Records Act allows a custodian of records voluntarily to make part or all of its records available to the public unless expressly prohibited by law.   Section 10(a) of the act expressly prohibits disclosure of confidential information, such as that protected by constitutional or common-law privacy.   Likewise, the statutory confidentiality mandated by section 5.08, subsection (a), of the Medical Practice Act prohibits disclosure except as provided by section 5.08.

In contrast, the federal policy you mention stems from authority granted by a specific statute dealing with the disclosure of records. See 44 U.S.C. §2104 (1982).   Subsection (b) of section 2104 provides authority for the release of census information which relates to

identified individuals pursuant to release agreements made between the director of the United States Bureau of Census and the director of the United States Archives. No similar Texas provision applies to the director of the Texas State Archives.

Nevertheless, after the passage of a significant number of years, a custodian of records may, according to his discretion, assume that the privacy interests protected by the constitutional and common law aspects of sections 3(a)(1) and 3(a)(2) have lapsed by death. As exemplified in one of the records you submitted, for example, when a person covered by a particular record was 27 years old in 1903, one might reasonably conclude in 1984 that the person has not achieved the age of 108. Any subsequent privacy interest would depend upon whether revealing the information would cause an invasion of the privacy of a living individual.

Finally, you seek clarification of your authority to destroy confidential records, the retention of which no longer serves a public purpose. Under the Open Records Act, a custodian of records has discretion over whether to preserve non-current records which the custodian is not required by law to preserve. See sec. 5(a). Under section 1 of article 5441b, V.T.C.S., the state librarian of Texas may dispose of records consigned to his custody that are more than ten years old if the librarian, the comptroller, the auditor, and the attorney general all agree that the records are valueless as official records. See Attorney General Opinion H-523 (1975); see also V.T.C.S. art. 5441c.

On the other hand, nothing in the act prohibits the custodian from preserving potentially valuable records until such time as he is reasonably certain that no privacy interests would be invaded by revelation of information protected by sections 3(a)(1) and 3(a)(2) of the Open Records Act. The genealogical and genetic research potential of the records in question could warrant a conclusion, at the custodian's discretion, that retention of the records would serve a public purpose.

## S U M M A R Y

Exceptions 3(a)(1) and 3(a)(2) of the Texas Open Records Act, article 6252-17a, V.T.C.S., apply to some of the information found in the medical records of the personnel files of the Texas National Guard for the years 1903-1913. Absent express or necessarily implied authority to open confidential information to the public, a custodian of public records may not adopt a policy in contravention of a third party's right of privacy. Nevertheless, the custodian may, after a

significant number of years, reasonably presume that the privacy interest protected by sections 3(a)(1) and 3(a)(2) has lapsed because of the death of the protected person. The confidentiality accorded to information in medical records by section 5.08 of article 4495b in connection with the statutory law aspect of section 3(a)(1) does <u>not</u> lapse upon the death of the protected person. Unless required by other law to retain them, a custodian of public records has discretion over whether to preserve non-current records of the sort in question.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Rick Gilpin, Chairman
Colin Carl
Susan Garrison
Tony Guillory
Jim Moellinger
Jennifer Riggs
Nancy Sutton